IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ROBERT JOHN FRECHETTE, *on behalf of himself and all others similarly situated*, | ) ) ) ) |
| Plaintiff, | ) ) No. 2:18-cv-3208-DCN |
| vs. | ) ) **ORDER** |
| ZIA TAQUERIA, LLC and KEVIN GRANT | ) ) |
| Defendants. | ) ) ) |

The following matter is before the court on plaintiff Robert John Frechette's ("Frechette") motion for partial summary judgment, ECF No. 38. For the reasons set forth below, the court denies the motion.

**I. BACKGROUND**

Zia Taqueria ("Zia") is Mexican-fusion restaurant located at 1956A Maybank Highway on James Island. Defendant Kevin Grant ("Grant") is the owner and sole member of defendant Zia Taqueria, LLC, through which he owns and operates the restaurant. Frechette worked as a server at Zia from 2017 to November 2018, and the similarly situated, unnamed plaintiffs were all employees of Zia at some point between 2015 and 2018. Zia is a "counter-style" restaurant meaning that customers place orders with an employee at the counter rather than from a member of a dedicated waitstaff. From 2015–2018, Zia employed four "front of the house" ("FOH") positions: counter attendant, bartender, floor assistant, and front of the house manager ("FOH manager"). Counter attendants, bartenders, and floor assistants were allegedly paid $2.13 per hour because Zia took the "tip credit" under the Fair Labor Standards Act ("FLSA"), which

1

allows an employer to use tips to meet his or her minimum wage obligations. FOH managers, on the other hand, are salaried employees who make well over minimum wage. When Zia opened, Grant created and implemented a tip-pooling system in which all of the tips earned in a given shift were collected and pooled. At the end of each night, the tip pool was distributed among the FOH positions, including to the FOH manager if the restaurant's net sales met a certain threshold.

Frechette filed this lawsuit on November 28, 2018, alleging that Zia's tip-pooling policy violates the Fair Labor Standard Act ("FLSA"), the South Carolina Payment of Wages Act ("SCPWA"), and the North Carolina Wages and Hour Act ("NCWHA") . Frechette's complaint asserts four claims: (1) failure to pay minimum wage under §§ 203 and 206 of the FLSA, (2) failure to pay overtime wage under § 207 of the FLSA, (3) unauthorized deductions from wages under the SCPWA, and (4) unauthorized nonpayment of wages under the NCWHA.

On December 6, 2019, Frechette filed a motion for partial summary judgment on his FLSA claims. ECF No. 38. On January 3, 2020, defendants responded, ECF No. 46, to which Frechette replied on January 10, 2020, ECF No. 48. On January 17, 2020, defendants moved for leave to file sur-reply, ECF No. 51, which the court granted on January 22, 2020, ECF No. 54. The court held a hearing on January 27, 2020. Thus, this matter is ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

2

Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir.

2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

Frechette argues that he is entitled to summary judgement on his FLSA claims on two grounds. First, despite not properly pleading this claim in the Amended Complaint, Frechette argues that defendants failed to give proper notice of the FLSA's minimum wage and tip credit provisions to Zia employees, in violation of 29 U.S.C. § 203(m)(2). Second, Frechette argues that Zia's tip-pooling policy violates § 203(m) because the tip pool is improperly shared with FOH managers, who are not "employees who customarily and regularly receive tips." The court addresses each in turn, finding that neither ground warrants summary judgment.

"The FLSA is best understood as the minimum wage/maximum hour law," Trejo v. Ryman Hosp. Properties, Inc., 795 F.3d 442, 446 (4th Cir. 2015), intended "to protect the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others," Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421,

427 (4th Cir. 2011) (quoting Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)). Accordingly, "[t]he FLSA should be broadly interpreted and applied to effectuate its goals." Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421, 427 (4th Cir. 2011).

The FLSA requires all employers to pay employees a minimum wage of $7.25 an hour. 29 U.S.C. § 206(a)(1). Recognizing that many employees earn a significant portion of their income through tips, the FLSA allows employers to take a "tip credit" against the minimum wage requirement for tipped employees:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.

29 U.S.C. § 203(m)(2)(A). In other words, an employer may use an employee's tips to satisfy the minimum wage requirement, provided that certain conditions are satisfied, set out in the statute:

> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The [tip credit] shall not apply with respect to any tipped employee unless [1] such employee has been informed by the employer of the provisions of this subsection, and [2] all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Id. An employer's failure to satisfy either condition disqualifies him from claiming the tip credit to satisfy the requirement that he pay his employees minimum wage. Because

5

Frechette argues that defendants failed to satisfy both conditions, the court addresses each in turn.

### A. Employee Notice

Frechette claims that he is entitled to summary judgment on his FLSA claims because the "undisputed evidence" establishes that Zia employees were not informed of § 203(m)'s provisions, in violation of 29 U.S.C. § 203(m)(2)(A).[1] However, the court need not address the substance of the issue because it cannot grant summary judgment in favor of a plaintiff with respect to a claim that was not properly alleged in his complaint.

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "[T]he requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, [but] they also provide criteria for defining issues for trial." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). The requirement that all claims be properly alleged ensures that a defendant has "illumination as to the substantive theory under which [plaintiff] [i]s proceeding . . ." Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 717 (4th Cir. 1983).

It follows, then, that a party cannot move for summary judgment on an issue that it has not properly pleaded. See United States v. Cochran, 79 F. Supp. 3d 578, 583

---

[1] Frechette also claims that defendants conceded this issue by failing to address it in their response to Frechette's summary judgment motion. However, Frechette only mentioned this new 'notice' claim is a single sentence of his 36-page summary judgment motion, before devoting three pages of his reply to the issue. The court granted defendants' motion to file a sur-reply so that the defendants could properly respond to the notice claim. Therefore, Frechette's contention that the defendants waived their right to oppose this issue is without merit and borders on frivolous.

(E.D.N.C. 2015) (declining to consider a theory of relief under the FLSA raised for the first time in a summary judgment motion) (citing Cooley v. Great S. Wood Preserving, 138 Fed. Appx. 149, 153 (11th Cir. 2005) and Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)). Courts are limited to granting relief only on those claims that were actually pleaded. Elmore v. Corcoran, 913 F.2d 170, 173 (4th Cir. 1990) (finding that a district court erred in sending an unpleaded claim to the jury for resolution). The proper procedure for a plaintiff to assert a new claim is to amend his complaint, not to assert a new argument in a summary judgment motion. Gilmour, 382 F.3d at 1315.

Frechette's amended complaint asserts two claims under the FLSA, the first based on a violation of the FLSA's tip credit provisions and the second based on a violation of the FLSA's overtime provisions. Although Frechette's first claim cites to 29 U.S.C. § 203(m) as the applicable statue, Frechette only pleads facts related to Zia's allegedly unlawful tip-pooling policy. Indeed, the vast majority of Frechette's summary judgment motion deals with the alleged illegality of Zia's tip-pooling policy. Neither of Frechette's FLSA claims contain allegations regarding Grant's failure to provide Zia employees with notice of § 203(m)'s provisions. Nor does either claim allege that Grant violated § 203(m) by failing to provide his employees notice of FLSA law. To be sure, the Frechette's claim that the defendants' failed to give Zia employees proper notice of § 203's provision may have substantive merit. However, the court cannot consider granting relief to a party on an unpleaded claim. Therefore, summary judgment with respect to this claim is denied.

**B. Tip-Pooling Policy**

As a second ground for summary judgement on his FLSA claims, Frechette argues that Zia's tip-pooling policy violates § 203(m) of the FLSA because FOH managers share in the tip pool. Section 203(m) provides that the tip credit shall not apply unless "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A).[2] Thus, Frechette's claim that the FOH managers improperly shared in the tip pool implicates two related sub-issues: (1) whether the FOH managers are in a position that "regularly and customarily receives tips" and (2) whether the FOH managers are

---

[2] On March 23, 2018, Congress added an amendment to the FLSA, which included a new subsection to § 203. The subsection states in full: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." § 203(m)(B)(2). It is unclear whether this new subsection, which uses the words "managers" and "supervisors", was intended to alter the traditional analysis courts employ for determining who may participate in a tip pool under the FLSA. Congress added § 203(m)(B)(2) in tandem with § 216(b), in order to provide a private cause of action to employees whose employers wrongfully withhold tips. The court has not found any cases that have held that Congress's addition of § 203(m)(2)(B) alters the traditional analysis in determining whether an individual's participation in a tip pool renders the tip pool invalid. Indeed, cases that cite to the new subsection continue to employ the traditional FLSA framework. See, e.g., Acosta v. Mezcal, Inc., 2019 WL 2550660 (D. Md. June 20, 2019).
   While Frechette cites to the new subsection in his motion for summary judgment, he fails to argue how the amendment might alter the analysis as to whether the FOH managers' participation in the tip pool renders it unlawful under the FLSA. Both parties analyze the issue solely within the traditional framework, leaving the court without guidance on how each believes the new section should be applied. Moreover, Frechette allegedly worked at Zia from 2017 until November 2018, meaning that the statute governed his employment for, at most, eight months. The parties have also not discussed the period of Frechette's employment to which the amendment might apply. For these reasons, the court declines to overturn decades of FLSA caselaw based on Frechette's bare citation to § 203(m)(2)(B) and proceeds with the traditional analysis to determine the legality of Zia's tip-pooling policy under the FLSA.

"employers" or "employees" for the purposes of the FLSA. Because genuine disputes of material fact underlie both issues, summary judgment is unavailable.

### a. "Regularly and Customarily Receive Tips"

All employees in a tip-pooling scheme must be the type of employees who customarily and regularly receive tips. If employees in positions that are not customarily tipped take part in a tip-pooling scheme, the employer loses the tip credit and thus cannot use his employees' tips to satisfy the requirement that they receive a minimum wage. Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 240 (2d Cir. 2011). It appears that the Fourth Circuit has not considered what qualifies as customarily and regularly receiving tips; however, other circuits have provided guidance on the issue.

"[O]ne's status as an employee who 'customarily and regularly receives tips' is 'determined on the basis of his or her activities,' not on the employee's job title." Montano v. Montrose Rest. Assocs., Inc., 800 F.3d 186, 191 (5th Cir. 2015) (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998047, at *2 (Nov. 4, 1997)). According to the Sixth Circuit, if an employee "abstain[s] from any direct intercourse with diners, work[s] entirely outside the view of patrons, and solely perform[s] duties traditionally classified as food preparation or kitchen support work, they [cannot] be validly categorized as 'tipped employees' under section 203(m)," or in other words, they cannot be characterized as employees who customarily and regularly receive tips. Myers v. Copper Cellar Corp., 192 F.3d 546, 550 (6th Cir. 1999). However, an employee should be categorized as one who "customarily and regularly receives tips" when he performs "important customer service functions." Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 301 (6th Cir. 1998). In short, whether a position

is one that "customarily and regularly receives tips" depends on the nature and extent of the employee's customer-facing activities.[3] See Rudy v. Consol. Rest. Companies, Inc., 2010 WL 3565418, at *3 (N.D. Tex. Aug. 18, 2010), report and recommendation adopted, 2010 WL 3565422 (N.D. Tex. Sept. 3, 2010) ("Many courts suggest that an employee's level of customer interaction is the most significant factor in evaluating whether he qualifies as a "tipped employee" under the FLSA.")

In a factually analogous case, a district court for the district of Maryland found that employees with "low-level supervisor[y]" duties were in a position that "regularly and customarily received tips" based on their "important customer service functions." Gregori v. Mkt. St. Mgmt., LLC, 2018 WL 4679734, at *6 (D. Md. Sept. 28, 2018). There, the employees in question "bussed tables. . . bartended . . . hosted . . . did dishes . . . regularly served guests and customers . . . ." Id. Therefore, the court found that despite their managerial role, the employees "regularly and customarily received tips" such that their participation in the tip pool did not violate the FLSA.

Frechette has presented evidence that suggests that the FOH manager role is a supervisory role with little customer interaction. ECF No. 38-1 at 6–8 (citing to evidence of the "managerial and operational responsibilities" of the FOH managers). This evidence suggests that the FOH managers' duties primarily take place outside the view of patrons and therefore suggests that FOH managers cannot be categorized as those who "customarily and regularly" receive tips. However, Frechette has also presented evidence

---

[3] In a previous order, the court found that Frechette produced sufficient evidence that the FOH managers were not "regularly tipped employees" for the purpose of conditional class certification. The standard on summary judgment, however, requires a higher showing.

that the FOH managers had regular service-based interactions with customers. See ECF No. 38-13, Munson Aff. ¶ 28 (stating that only the FOH managers "handled customers complaints" by "discuss[ing] the issue directly with the customers."). More importantly, defendants have presented evidence that the FOH managers regularly interacted with customers and performed duties that are traditionally tipped:

> The FOH Manager had frequent and direct interaction with restaurant patrons in the front of the house dining room area, as this position performed many of the same duties as other front of the house staff, including delivering food to customers' tables, maintaining cleanliness of the front of the house, refilling drinks, chips, and salsa, addressing customer complaints and concerns, taking food and drink orders from the counter station, bar area, or directly from the customers tableside and receiving payment for these orders.

ECF No. 46 at 8 (citing ECF No. 46-1, Grant Aff. ¶ 13; ECF No. 46-10, Tinnin Depo. at 53:8–54:24; ECF No. 46-11, Weakley Depo. at 30:12–31:6).[4] Therefore, the legal determination of whether the FOH managers are the type of employees who "regularly and customarily receive tips" depends on genuine issues of material fact, and summary judgment is therefore inappropriate.

---

[4] Frechette asks the court to disregard the testimony of Grant and FOH manager William Smith because Grant and Smith's affidavits are "self-serving sham affidavits." ECF No. 48 at 4. This contention is without merit. The sham affidavit doctrine invalidates testimony that is flatly contradictory to a person's earlier, sworn testimony in order to prevent a party from creating factual disputes by simply filling in gaps in the record or making empty sworn averments. See Pronin v. Johnson, 2017 WL 2720132, at *3 (D.S.C. June 23, 2017).

Here, Grant and Smith's affidavits are self-serving, but they clearly do not sink to the level of sham affidavits. The Fourth Circuit has noted that "there is []no rule against self-serving affidavits." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). As the court noted at the hearing, it is the rare affidavit that isn't self-serving.

### b. Employee/Employer Under the FLSA

29 U.S.C. § 203(m)(2)'s requirement that "all tips received by the employee must be retained by the employee" prohibits an "employer" under the FLSA from sharing in the tip pool. Wajcman v. Inv. Corp. of Palm Beach, 2008 WL 783741, at *3 (S.D. Fla. Mar. 20, 2008). Therefore, even if an individual qualifies as a "regularly and customarily tipped employee," she may still be disqualified from participating in a tip pool if she is an "employer" relative to others who participate in the tip pool. Frechette argues that the FOH managers are "employers" and thus that their participation in the tip pool violates § 203(m). Defendants argue that the FOH managers are employees, whose participation in the tip pool does not render the policy illegal.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C.A. § 203(d). The Supreme Court has held that the FLSA's definition of employer is "expansive" and includes individuals with "managerial responsibilities" who exercise "substantial control over the terms and conditions of the work of employees." Falk v. Brennan, 414 U.S. 190, 195 (1973). The Fourth Circuit follows the majority approach and employs the "economic realities test" to determine whether an individual is an employer or employee within the context of given situation.[5] Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016).

The economic realities test contemplates four factors to determine whether an individual is an employer with respect to other employees: "whether the alleged

---

[5] As Frechette correctly notes, the categorization of an individual as an employer or employee is not static. An induvial can be an employee relative to a superior and simultaneously an employer relative to an inferior. 29 C.F.R. § 791.2.

employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. The test encourages consideration of the "totality of the circumstances," and no single factor is dispositive. Perez v. Ocean View Seafood Rest., Inc., 217 F. Supp. 3d 868, 878 (D.S.C. 2016) (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988). Courts have found that an individual's job title is irrelevant to this inquiry. Davis v. B & S, Inc., 38 F. Supp. 2d 707, 716 (N.D. Ind. 1998). Instead, the "touchstone" of the inquiry "is economic reality." Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983) (citing Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33 (1961).

Although the inquiry under the FLSA as to whether one is an "employer" is a legal determination, it requires the district court to make subsidiary factual findings. Patel v. Wargo, 803 F.2d 632, 634 & n.1 (11th Cir. 1986). "If the parties dispute numerous material facts that impact the application of these factors, the movant has failed to show the worker's status as a matter of law and is not entitled to summary judgment on this issue." McFeeley v. Jackson St. Entm't, LLC, 47 F. Supp. 3d 260, 268 (D. Md. 2014), aff'd, 825 F.3d 235 (4th Cir. 2016). The court addresses each factor in turn.

**1. Hiring/Firing Power**

The parties present conflicting evidence as to whether the FOH managers had the authority from Grant to hire and fire employees. Frechette has presented testimony of former employees who claim that the FOH managers both hired and fired FOH employees without the approval of Grant. See ECF No. 38-2, Tinnin Aff. ¶ 15 ("I was hired by [FOH manager] Chris Long on the spot without Kevin's approval . . ."); ECF

13

No. 38-17, Frechette Aff. ¶ 11; ECF No. 38-19, Brown Aff. ¶ 17; ECF No. 32-20, Noble Aff. ¶ 12; ECF No. 38-13, Munson Aff. ¶ 11; ECF No. 38-11, Maher Aff. ¶ 12. Conversely, defendants argue that "FOH Managers did not possess the authority to make ultimate personnel decisions and did not have the authority to hire employees or to fire employees," ECF No. 46 at 12, and have presented evidence to that effect, see ECF No. 46-1, Grant Aff. ¶¶ 34, 40, 53; ECF No. 46-12, Smith Aff. ¶7–8. Thus, both sides have presented competent, conflicting evidence regarding whether the FOH managers had the authority to hire and fire employees. Therefore, because a genuine issue of material fact underlies this factor, the court cannot resolve it at the summary judgment stage. See McFeeley, 47 F. Supp. 3d at 268.

### 2. Supervision and Control of Work Schedules or Employment Conditions

The parties have also presented conflicting evidence as to whether the FOH managers controlled the work schedules of the other FOH employees. See ECF No. 46-1, Grant Aff. ¶ 12 (stating that while FOH managers wrote the first draft of the schedule, that draft could not be posted without Grant's input, edits, and approval); ECF No. 46-12, Smith Aff. ¶ 13; but see ECF No. 38-2, Tinnin Aff. ¶ 22; ECF No. 38-4, Weakley Aff. ¶ 14; ECF No. 38-13, Munson Aff. ¶ 13 (stating that the FOH managers had unilateral authority to determine employee schedules). Clearly, the facts germane to this factor of the test are genuinely disputed.

### 3. Determination of Payment

Defendants contend that the "FOH managers did not play any part in determining front of the house employees' hourly rate of $2.13, nor did they have any other authority to determine employee's compensation." ECF No. 46 at 10. Accordingly, they have

presented evidence of the same.  See ECF No. 46-1, Grant Aff. ¶ 19, 42, 44; ECF No. 46-12, Smith Aff. ¶ 17.  Further, defendants note that the tip-pooling system was the brainchild of Grant, and the FOH managers played no role in its creation or implementation.

Frechette, however, has presented evidence that the FOH managers played a significant role in the implementation of the tip-pooling system, by calculating the amount of tip money to which each employee was entitled and distributing the same.  However, Frechette only contends that the FOH managers played a role in implementing the tip-pooling policy, Grant's system, according to Grant's instruction.  Frechette has presented no evidence that the FOH managers actually set or had influence over the policy that determined the payment of any employee.  Therefore, this factor weighs against a finding that the FOH managers are employers for the purposes of the FLSA.

### 4. Employment Records

There is no genuine dispute that the FOH managers did not maintain control over employment records.  Defendants have presented evidence that Grant was the sole individual with access to employees' personnel files, and Frechette has not presented any evidence to the contrary.  Although Frechette has presented evidence that FOH managers have access to sales records at the closing of a shift, the performance of clerical duties does not rise to the level of maintaining employment records.  Therefore, this factor weighs against a finding that the FOH managers are employers within the meaning of the FLSA.  In sum, summary judgment is inappropriate as each factor is either dependent

15

upon disputes of fact or weighs in favor of a finding that the FOH managers were not employees.[6]

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** plaintiffs' motion for summary judgment.

**AND IT IS SO ORDERED.**

                                                DAVID C. NORTON
                                                UNITED STATES DISTRICT JUDGE

**February 7, 2020**
**Charleston, South Carolina**

---

[6] In addition, defendants ask the court to rely on a string of cases which place great weight upon an additional factor—whether or not the purported employer had control over the policy or conduct that allegedly violated the FLSA. See Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (holding that where a defendant "possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual . . . ."); Rubin v. Tourneau, Inc., 797 F. Supp. 247, 253 (S.D.N.Y. 1992) (stating that determination of employer status hinges on whether the individuals "exert control over the employer's compliance" with the FLSA); Dole v. Simpson, 784 F. Supp. 538 (S.D. Ind. 1991) (same).
      Each of those cases considered the question of whether an individual was an employer under the FLSA to determine whether the FLSA could be enforced against that individual. It makes good sense that where an individual exerts control over a policy that violates the FLSA, he should be considered an employer for the purposes of that violation. The logic and policy of those cases do not fit the facts of this case. Here, the court determines whether the FOH managers are employers not to determine whether the FLSA applies to the FOH managers, but to determine whether the defendants' tip-pooling policy violates the FLSA. It is uncontested that the FOH managers themselves did not violate the FLSA, and Frechette does not allege that they should be held liable under the FLSA. Therefore, this factor does not warrant the court's consideration.